## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION

| | | |
|---|---|---|
| SANIA KADRI and SAMAD KADRI | ) | |
| | ) | |
|     Plaintiffs | ) | |
| | ) | |
| vs. | ) | |
| | ) | **CASE NO.** 8:24-cv-2233 |
| PRONTOWASH, LLC, a Florida limited | ) | **JURY DEMAND** |
| liability company; JONATHAN | ) | |
| MUNSELL, an individual; SUCCESS | ) | |
| SYSTEMS MGMT LLC, a North | ) | |
| Carolina limited liability company, | ) | |
| PW ATL 1, LLC, a North Carolina | ) | |
| limited liability company, and JAMES | ) | |
| BORNAMANN, an individual, | ) | |
| | ) | |
|     Defendants. | ) | |

## VERIFIED COMPLAINT

**COME NOW** Plaintiffs SAMAD KADRI and SANIA KADRI ("Mr. and Mrs. Kadri" or "Plaintiffs") by and through their undersigned counsel and hereby file this complaint asserting causes of action against Defendants PRONTOWASH, LLC, JONATHAN MUNSELL, SUCCESS SYSTEMS MGMT, LLC, PW ATL 1, LLC, and JAMES BORNAMANN, demand a jury trial for all causes of action so triable, and for their cause of action state as follows:

**The Parties, Jurisdiction, and Venue**

1.    Plaintiffs SAMAD KADRI and SANIA KADRI are husband and wife and are residents of Canada.

2.    PRONTOWASH, LLC is a Florida limited liability company, which at all times relevant to these proceedings was doing business in Hillsborough County Florida.

3.    PRONTOWASH, LLC holds itself out as the franchisor of ProntoWash franchises in the United States.  Upon information and belief, PRONTOWASH LLC is solely owned by and an alter ego of Jonathan Munsell.

1

4.     JONATHAN MUNSELL is a natural person who, upon information and belief, resides in North Carolina and is doing business in Hillsborough County Florida.

5.     JONATHAN MUNSELL is represented as the Chief Executive Officer, Owner, and Managing Member of Defendant PRONTOWASH, LLC and the owner of Defendant SUCCESS SYSTEMS MGMT, LLC.

6.     SUCCESS SYSTEMS MGMT, LLC, is a North Carolina limited liability company in active concert with the other defendants and is doing business in Hillsborough County Florida.

7.     Upon information and belief, SUCCESS SYSTEMS MGMT, LLC is wholly owned by Jonathan Munsell, the alter ego of Jonathan Munsell, and is one of the entities through which he perpetrates his fraudulent scheme.

8.     SUCCESS SYSTEMS MGMT, LLC was represented as the 100% owner of PW ATL 1, LLC which sold 50% of the ownership interests in PW ATL 1, LLC, a newly formed entity and purported franchisee of ProntoWash, LLC, to Plaintiff.

9.     PW ATL 1, LLC is a North Carolina limited liability company in active concert with the other defendants and is one of the entities through which Jonathan Munsell perpetrates his fraudulent scheme.

10.    PW ATL 1, LLC, upon information and belief, is the entity formed by Defendant Jonathan Munsell to operate the purported Atlanta Pronto Wash franchise in which Mr. and Mrs. Kadri was purportedly gaining a 50% interest.

11.    JAMES BORNAMANN is a natural person in active concert with the other defendants and doing business in Hillsborough County Florida.

12.    JAMES BORNAMANN, upon information and belief, is the Chief Financial Officer of PRONTOWASH, LLC and received, handled, and distributed Plaintiff's investment funds.

13.     Jurisdiction and Venue are appropriate in that the intentional conduct giving rise to the Complaint occurred, in large part, in the Middle District of Florida, and most of the Defendants reside in or are doing business in the Middle District of Florida.

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, 28 U.S.C. §1367, and 18 U.S.C. §1964 and 15 U.S.C.S. § 77l in that the claims are based, in large part on violation of federal statutes.

15.     The court has personal jurisdiction over each of the defendants, as they are each conducting business in Florida and/or in active concert with a scheme being perpetrated from Florida.

**The Franchise Disclosures**

16.     In the Spring of 2023, Mr. and Mrs. Kadri began exploring investment opportunities in the United States with hopes of obtaining an E-2 Investor Visa.

17.     In April 2023, Mr. and Mrs. Kadri's broker, Matt Rieder, provided their information to Jonathan Munsell and Pronto Wash LLC.

18.     Mr. and Mrs. Kadri received from Jonathan Munsell a copy of the ProntoWash franchise disclosure document with an issuance date of April 24, 2022 (the "FDD"), a true and correct copy of which is attached hereto as **Exhibit A**.  This was the only franchise disclosure document provided to Mr. and Mrs. Kadri.

19.     In a telephone call on April 24, 2023, Jonathan Munsell stated that the Atlanta franchise was ready to open on May 8, 2023 and that he could provide the business plan, 5 year forecast and all paperwork for the E-2 package in one (1) week.

20.     From the very beginning, Defendants knew and anticipated that Plaintiffs would be incurring significant legal and other costs in preparing their E-2 Investor Visa application.

21.     In a telephone call on April 24, 2023, Jonathan Munsell bragged that the Argentinian Embassy said that the Pronto Wash E-2 package was the best he had ever seen.

22.     Contrary to the representations made and unbeknownst to Plaintiffs, at the time of the sale to Plaintiff, there were no successful Pronto Wash locations and Pronto Wash and Jonathan Munsell were the defendants in multiple lawsuits, some of which had already resulted in final judgment.

23.     Although Mr. and Mrs. Kadri did not sign a franchise agreement, upon information and belief, PW ATL 1, LLC, the entity in which they purportedly gained a fifty percent (50%) ownership interest, signed a franchise agreement.  The FDD represented that Florida law and venue would apply to a transaction involving ProntoWash.

24.     Unbeknownst to Mr. and Mrs. Kadri, the FDD was woefully inadequate and not in compliance with the Florida and FTC Franchise Rules and included major material omissions and misrepresentations.

25.     For example, and without limitation as to other misrepresentations:

    a.  The FDD was out-of-date and not current.

    b.  The FDD only provided information about owning a single unit franchise and did not include any representations regarding area development opportunities or joint venture/partnership opportunities.

    c.  The FDD represented in Item 7 that the start-up costs ranged from $51,400 to $369,800.  Mr. Munsell demanded $125,000 for a 50% interest in the Atlanta franchise, which he represented was ready to open with two mobile units.

    d.  The FDD represents that a franchisee will pay $8,525 to $75,525 to ProntoWash LLC or its affiliate, but Defendants required Mr. and Mrs. Kadri to pay $125,000 to Pronto Wash, LLC's affiliate SUCCESS SYSTEMS MGMT LLC.

e.  The FDD indicates that the entity offering the franchise is ProntoWash, LLC, a Florida limited liability company.

f.  The FDD represents that ProntoWash Management LLC is the operating arm of the franchisor, but the FDD blatantly omits the fact that Mr. Munsell dissolved ProntoWash Management LLC on June 30, 2022 (before this transaction) on the grounds that it was insolvent.

g.  The FDD acknowledges that ProntoWash LLC is a master franchisee but does not provide the information regarding the franchisor as required by the FTC Franchise Rule.

h.  The FDD Fraudulently Misrepresented the Officers and Directors.

i.  Item 2 does not contain the information required by the FTC Franchise Rule for any of the individuals disclosed – Woefully absent from the disclosure are the multitudes of companies in which Mr. Munsell serves as manager, many of which are now dissolved, indicating that these businesses failed.

j.  Item 2 only discloses Mr. Munsell and Mr. Swift as officers and directors of ProntoWash LLC, although the records for ProntoWash LLC with the Florida Secretary of State indicates that Jonathan Munsell and James Bornamann are the authorized representatives of the Company.

k.  Item 2 does not provide any information regarding James Bornamann, though during the sales process he is held out as the Chief Financial Officer of ProntoWash LLC.

l.  Item 3 does not disclose any of the litigation brought by other franchisees and investors, as required by the Florida Franchise Act and the FTC Franchise Rule.

m.  Table 3 of Item 20 of the FDD represents that there are 18 current franchises, when, in reality, most of these "franchise" entities are actually owned and/or managed by Mr. Munsell and none of the entities had operational units at the time of the offering.

n.  Table 3 of Item 20 of the FDD represents that there are 18 current franchises, but Pronto Wash, on its website represented that ProntoWash had 42 active franchisees with E2 Visas.  Unbeknownst to Plaintiffs there were no open and active franchises at the time of the sale.

o.  The FDD does not provide the audited financials or any financials for either the Franchisor or the Master Franchisee.

p.  The FDD provides contact information for numerous franchisees, but, unbeknownst to Plaintiff, none of these franchises actually existed as open locations at the time of the sale to Plaintiff.

**The Bait and Switch**

26.  Following Mr. and Mrs. Kadri's review of the FDD, they engaged in conversations with Mr. Munsell via telephone and the internet.

27.  Mr. Munsell referred Mr. and Mrs. Kadri to a video on the Pronto Wash website where Mr. Munsell and Stanley Weiss went through the financials of Pronto Wash and demonstrated that when Mr. Munsell was a partner in the business, the business was immensely more profitable than when it was owned solely by a franchisee.

28.  Mr. and Mrs. Kadri reviewed the information on the website www.prontowash.com which included financial performance representations.   In a video titled "Franchise Success with Jonathan Munsell and Stanley Weiss," Jonathan Munsell went through 5 year projection spreadsheets and showed how he expects the first year of the business to have $208,000 gross

revenue per mobile unit, with 17% of that being net profit or EBITDA.  Mr. Munsell went on to manipulate the spreadsheet and show how if he was involved as an owner of the business, the first year, the business per mobile unit would have $450,000 in gross revenue with 43% of that being net profit or EBITDA.

29.     In this video, Jonathan Munsell also represented that he knew how to reduce the start-up costs to almost nothing and presented a proforma showing his start-up costs would be $81,045.

30.     Mr. and Mrs. Kadri reviewed information on the website www.prontowash.com which included promises that investment with ProntoWash was a "secure investment;" ProntoWash was a "healthy franchise;"  they had an "expedited via process:" had secured "45 successful visas;" and had "42 active owners with US visas."

31.     Copies of screenshots of some of the representations obtained from the website www.prontowash.com, including the video discussed above, on which Mr. and Mrs. Kadri relied are attached hereto as **Exhibit C**.

32.     On May 11, 2023, Jonathan Munsell began high pressure sales techniques and told Mr. and Mrs. Kadri that someone else was interested in partnering with him in the Atlanta franchise and that if they didn't make a $10,000 deposit right away, the opportunity to partner with him and make more money would be gone.

33.     In this call, Mr. Munsell used bait and switch tactics to convince Mr. and Mrs. Kadri not to purchase an independent franchise but, instead, to "partner" with him in the Atlanta area. In the proposed partnership, Mr. Munsell represented that Mr. and Mrs. Kadri's investment would only be half of the costs because he would equally invest the same amount as they were investing.

34.     In a recorded Zoom call on May 12, 2023, Mr. Munsell went through the financial projections of the Atlanta franchise and advised that the business would open the first of June with two (2) mobile units.

35.     Plaintiffs would later learn that there were no mobile units used in Atlanta and that the business never operated as promised, never had any significant assets, and was never profitable.

36.     Mr. Munsell promised Mr. and Mrs. Kadri that by investing in a partnership Mr. and Mrs. Kadri would not have to do anything, that he would procure all the equipment, including the two (2) mobile units, train and manage all employees, open, and operate the business.  Mr. Munsell promised that the business would be operating profitably from day one.

37.     Mr. and Mrs. Kadri never received an area development franchise disclosure document.

38.     In reliance upon Mr. Munsell's representations that Mr. and Mrs. Kadri's investment would be secure and passive, their investment would be much more profitable if Mr. Munsell were involved in the ownership, and that the investment would be returned if Mr. and Mrs. Kadri cancelled the agreement, Mr. and Mrs. Kadri caved to Mr. Munsell's high pressure sales tactics and executed a "Term Sheet" for the partnership on May 15, 2023, attached hereto as **Exhibit B**, and Plaintiffs transferred a $10,000 deposit to Munsell.

39.     Throughout the sales process, Jonathan Munsell repeatedly assured Mr. and Mrs. Kadri that the contract was cancelable and that their investment would be refunded if they no longer wanted to participate or if they could not obtain the E-2 Visa within 180 days.

40.     On May 18 and May 23, 2023, Plaintiffs and Munsell had additional calls to discuss the specifics of the franchise and the Visa process.

41.     Mr. Munsell also set up "validation calls" with James Bornamann and Jose Suniga on May 23, 2024.  In these calls James Bornamann and Jose Suniga both claimed to own several

locations as partners with Jonathan Munsell and advised Plaintiffs that Pronto Wash took care of everything and they did not have to do anything except collect dividends.

42.    Plaintiffs learned much later that neither of these gentlemen owned any Pronto Wash locations.

43.    Plaintiffs relied on the representations of Defendants, and Plaintiffs were reasonably entitled to rely on the representations of Defendants.

44.    On May 25, 2023, Plaintiffs completed the purchase for 50% of the Atlanta area franchise and transferred an additional $115,000 to Munsell's company Success Systems Mgmt LLC.

45.    The Membership Purchase Agreement and Operating Agreement attached hereto as **Exhibit D** were presented to Plaintiffs by Jonathan Munsell, and Plaintiffs executed the documents.

46.    Upon information and belief, James Bornamann handled the receipt, transfer, and disbursement of the funds.

47.    Upon information and belief, all of the Defendants received a portion of and benefited from Mr. and Mrs. Kadri's transfer of funds.

48.    Plaintiffs also retained the services of immigration attorney Bobby Chung and paid Attorney Chung non-refundable legal fees to assist with the preparation of their E-2 Investor Visa application.

49.    Defendants knew that Plaintiffs were incurring legal fees and other costs in connection with their E-2 Investor Visa application.

**The Failure to Provide E-2 Paperwork**

50.    Throughout the month of June, Plaintiffs repeatedly messaged Jonathan Munsell regarding the E-2 paperwork.

51.     Jonathan Munsell repeatedly failed to respond until late June when he sent a message saying he had been out sick.

52.     On June 29, 2023, Jonathan Munsell stated in a text message that he had heard from his team that the E-2 package was complete.

53.     On July 11, 2023, on a Zoom Call, Jonathan Munsell went through paperwork for the E-2 package that was woefully incomplete.  Jonathan Munsell advised that he was waiting on additional information from James Bornamann and that it would be complete by the end of the week.

54.     Throughout July 2023, Plaintiffs continued to message Jonathan Munsell about the status of the E-2 package.  Jonathan Munsell failed and refused to respond throughout July 2023.

55.     On July 25, 2023, in a phone call with James Bornamann, Mr. Bornamann apologized for the delays, asked for the E-2 checklist, and advised that he would have the financials completed as soon as possible.

56.     Plaintiffs emailed the E-2 checklist to James Bornamann on July 25, 2023, and Mr. Bornamann acknowledged receipt.

57.     On August 1, 2023, Jonathan Munsell finally sent a text message stating that he would have the E-2 package rectified by the end of the day.

58.     On August 9, 2023, an administrative coordinator for Jonathan Munsell sent a text that advised that the E-2 Visa package would be ready within 24 hours.

59.     Throughout August 2023, Plaintiffs continued to message Jonathan Munsell about the status of the E-2 package.  Jonathan Munsell failed and refused to respond until August 23, 2023, when he advised that he had been away on a cruise.  He again promised to provide the E-2 package and again failed and refused to do so.

60.     On September 7, 2023, Plaintiffs booked an appointment through a pseudo name and received an immediate response.  Once Jonathan Munsell and James Bornamann learned that Plaintiffs was the actual "new client" they apologized for not responding and promised to have the E-2 documents by Tuesday the following week.  They also promised to reimburse Plaintiff's loan interest.

61.     Defendants failed and refused, again, to comply with either of the September 7, 2023 promises.

62.     On September 10, 2023, Plaintiffs flew to Atlanta to view the business operations. Plaintiffs met with Defendants' agent, Stanley Weiss, and found that there was minimal equipment and supplies (nowhere near a $125,000 investment); there were no mobile units; the business was not actually serving any customers, but they were washing Mr. Weiss' car.

63.     On a Zoom call on September 21, 2023, Plaintiffs expressed their displeasure at every aspect of the business and the failure to provide the information needed for the E-2 Visa application.  Jonathan Munsell promised to have the financials for the E-2 package the following day.

64.     On September 26, 2023, Munsell provided some financials that were obviously not related to this business and did not even show Plaintiffs' investment in the business.  Most of what was required for the E-2 application and promised was missing.

**The Demand for Refund**

65.     On October 10, 2023, in an email, Plaintiffs provided Munsell with notice of intent to sell.

66.     On October 17, 2023, Plaintiffs and Jonathan Munsell discussed the sale of the business, and Jonathan promised to list the business for sale and find a buyer for Plaintiffs' fifty percent interest.

67.     On October 24, 2023, Plaintiffs emailed Jonathan Munsell with a detailed list of all the missing and erroneous information that must be supplied and/or corrected for the E-2 package and included a reminder of the intent to sell.

68.     On November 5, 2023, Plaintiffs inquired via text message asking what was being done with respect to the sale, Mr. Munsell advised that he was listing the business for sale.

69.     On November 9, 2023, via registered mail return receipt, Plaintiffs sent Jonathan Munsell a formal Notice of Special Circumstance Withdrawal because Defendants failed and refused to provide the information required for the E-2 application.  The Notice gave Defendants ninety (90) days to sell the Company or return eighty percent (80%) of Plaintiffs' investment, as agreed in the Parties Operating Documents.  A copy of the Notice of Withdrawal is attached as **Exhibit E**.

70.     Defendants failed and refused to respond to the Notice or refund any portion of Plaintiffs' investment.

71.     On December 13, 2023, Plaintiffs finally reached Stan Weiss who advised that he no longer worked for Pronto Wash and did not know anything about the operations but believed the Atlanta location was no longer operational.

72.     Upon information and belief, despite the promises made during the sales process, Defendants had no intention of building or operating a viable business and no intention of investing Plaintiffs' funds into a real business.

73.     Upon information and belief, despite the refund promises made, Defendants had no intention of returning any funds to Mr. and Mrs. Kadri.

74.     Instead, Jonathan Munsell and the other defendants were conspiring to continue running this pyramid investment scam and, upon information and belief, are continuing to dupe

unsuspecting foreign nationals out of hundreds of thousands of dollars while providing nothing to them in return.

75.     Upon information and belief, Defendants never invested Plaintiffs' funds in business assets, Defendants never acquired the mobile units and equipment promised, and the Atlanta Pronto Wash never operated as a full-time business.

76.     Upon information and belief, the Atlanta Pronto Wash does not exist at all today.

**Uncovering the Scheme**

77.     When Mr. Munsell failed and refused to pay as promised, Mr. and Mrs. Kadri obtained counsel and began an investigation.

78.     Through the investigation, Mr. and Mrs. Kadri learned that Defendants' pattern and practice is to hold themselves out as an international franchise system but ultimately dupe foreign nationals into giving them money directly for a "partnership" so that the investors have no control over how the funds are spent or what happens to the funds.  After obtaining the funds, the Defendants stop communicating.

79.     For example, On May 27, 2022, Sergio Macrobio filed a complaint against Pronto Wash, LLC and Jonathan Munsell upon similar facts in the Circuit Court for the Thirteenth Judicial Circuit for the State of Florida, Case No. 22-CA-004496 and obtained a final judgment on December 28, 2022.

80.     On September 15, 2022, a final judgment for $300,000 was obtained against Jonathan Munsell and Pronto Wash LLC by Hey Change Corp.

81.     On June 13, 2022, Mexico foreign national Haim Tbeili filed a complaint on his RICO claim and other causes of action upon eerily similar facts against Jonathan Munsell, ProntoWash LLC, and other defendants in United States District Court for the Southern District of Florida, case number 1:22-cv-21806-RNS and obtained a final judgment on August 9, 2023.

82.     On November 8, 2023, Olugbemiga Abidemi Oke filed a complaint in the United States District Court for the Middle District of Florida, case number Case 8:23-cv-02558 alleging eerily similar facts and causes of action against Jonathan Munsell and other related defendants.

83.     The scheme being perpetrated by Defendants is essentially the same from case to case: foreign nationals are presented a Pronto Wash franchise opportunity but are later convinced through fraudulent promises of increased success to turn several hundred thousand dollars over to Munsell and his other companies directly in a "partnership" that ultimately only results in Defendants absconding with the funds and ceasing communication shortly after receiving the funds.

84.     Due to above outlined online representations regarding the ability to procure visas, Defendants' abhorrent conduct is likely to continue to steal money from future investors.

85.     Upon information and belief, each of the defendants has benefited from the scheme outlined herein.

86.     Upon information and belief, some or all of the defendants are not following corporate formalities, are taking company funds for personal use, and co-mingling and transferring assets between multiple companies to avoid responsibility for their obligations.

## COUNT I – FRAUDULENT MISREPRESENTATION –

### All Defendants

87.     Plaintiffs hereby restate, re-allege and incorporate the above paragraphs as if fully set forth herein.

88.     Fraud occurs when a party makes a material misrepresentation with knowledge of its falsity (or recklessly without any knowledge of the truth) and as a positive assertion; the misrepresentation is made with the intention that it should be acted on by the other party; and the other party acts in reliance on the misrepresentation and thereby suffers injury.

89.     A misrepresentation is a false statement of fact, a promise of future performance made with intent not to perform as promised, or a failure to disclose when there was a duty to disclose.

90.     A principal is civilly liable for the tortious and fraudulent acts of his agents, regardless of the principal's knowledge of the tortious act.  See Am. Eagle Credit Corp. v. Select Holding, 865 F. Supp. 800, 814 (S.D. Fla. 1994); Gates v. Utsey, 177 So. 2d 486 (Fla. Dist. Ct. App. 1965); Van Engers v. Hickory House, Inc., 104 So. 2d 843 (Fla. Dist Ct. App. 1958); City of Green Cove Springs v. Donaldson, 348 F.2d 197 (5th Cir. 1965); West Florida Land Co. v. Studebaker, 37 Fla. 28, 19 So. 176 (1896); Donner v. Morse Auto Rentals, Inc., 147 So. 2d 577 (Fla. Dist. Ct. App. 1962); Wheeler v. Baars, 33 Fla. 696, 15 So. 584 (1894).

91.     The representations of Defendants constitute false or reckless statements of fact and failures to disclose in light of a duty to disclose.

92.     Jonathan Munsell, James Bornamann, and Success Systems Mgmt, LLC as officers and/or directors of ProntoWash LLC are liable for the false or reckless statements of fact and failures to disclose in light of a duty to disclose.

93.     As set forth above in detail, Defendants made the misrepresentations to induce Mr. and Mrs. Kadri to transfer money to them.

94.     The representations were false, and Defendants knew or should have known the representations were false.

95.     The representations were crucial to Mr. and Mrs. Kadri's decision to invest in Pronto Wash.

96.     Mr. and Mrs. Kadri were unaware that the representations were false at the time they entered into the transaction.

97.     Mr. and Mrs. Kadri relied on the representations as being true when they entered into the transaction.

98.     Mr. and Mrs. Kadri were reasonably entitled to rely on the representations of Defendants.

99.     Mr. and Mrs. Kadri have been injured by their reliance on the representations in that they entered into the transaction and paid $125,000 without receiving anything in return.

100.    Mr. and Mrs. Kadri are entitled to rescind the purchase and to obtain a refund, plus punitive damages, legal fees, costs, and interest.

**WHEREFORE** Plaintiffs pray that this Court enter judgment in their favor and for an award of monetary damages in an amount to be determined at trial.  Plaintiffs also pray for their reasonable attorneys' fees and costs incurred herein, for statutory treble damages, and for such other and further relief as this Court deems just and proper under the circumstances.

### <u>COUNT II – SECURITIES FRAUD – 15 U.S.C.S. § 77l – All Defendants</u>

101.    Plaintiffs hereby restate, re-allege and incorporate the above paragraphs 1-100 as if fully set forth herein.

102.    The Securities Act of 1933 prohibits the sale of unregistered securities and the sale of securities via any fraudulent misrepresentation in interstate commerce.

103.    As set forth above, Defendants promised to provide Mr. and Mrs. Kadri with a 50% ownership interest in an entity that would own and operate PowerWash franchise units.

104.    Defendants obtained the investment from Mr. and Mrs. Kadri by means of fraudulent misrepresentations in interstate commerce.

105.    Mr. and Mrs. Kadri have not received any return or income from the investment.

106.    Upon information and belief, the security was not registered with the SEC or with any state and is not exempt from registration.

107.     Pursuant to the statute, Plaintiffs are entitled to rescission, damages in an amount to be proven at trial, attorneys' fees, and costs.

**WHEREFORE** Plaintiffs pray that this Court enter judgment in his favor and for an award of monetary damages in an amount to be determined at trial.   Plaintiffs also pray for their reasonable attorneys' fees and costs incurred herein, for statutory damages, and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT III – FLORIDA SECURITIES AND INVESTOR PROTECTION ACT, FLA. STAT. § 517.011 et. seq.  – All Defendants

108.     Plaintiffs hereby restate, re-allege and incorporate the above paragraphs 1-107 as if fully set forth herein.

109.     It is unlawful and a violation of Florida Securities and Investor Protection Act, Fla. Stat. § 517.011 et. seq. for any person to sell or offer to sell a security within Florida unless the security is exempt, a federal covered security, or registered or to sell a security via any fraudulent misrepresentation.

110.     As set forth in detail above, Defendants sold Mr. and Mrs. Kadri a fifty percent (50%) interest in an entity that would own and operate ProntoWash franchises of the Florida based ProntoWash franchise system.

111.     Upon information and belief, the security was not registered with the SEC or with the State of Florida and is not exempt from registration.

112.     Defendants obtained the investment from Mr. and Mrs. Kadri by means of fraudulent misrepresentations as detailed above.

113.     Pursuant to the statute, Plaintiffs are entitled to rescission, damages in an amount to be proven at trial, attorneys' fees, and costs.

**WHEREFORE** Plaintiffs pray that this Court enter judgment in their favor and for an award of monetary damages in an amount to be determined at trial.  Plaintiffs also pray for their reasonable attorneys' fees and costs incurred herein, for statutory damages, and for such other and further relief as this Court deems just and proper under the circumstances.

<u>**COUNT IV – GEORGIA UNIFORM SECURITIES ACT, All Defendants**</u>

114.    Plaintiffs hereby restate, re-allege and incorporate the above paragraphs 1-107 as if fully set forth herein.

115.    It is unlawful and a violation of the Georgia Uniform Securities Act for any person to sell or offer to sell a security within Texas unless the security is exempt or registered and unlawful to sell any security by material misrepresentation or

116.    As set forth in detail above, Defendants sold Mr. and Mrs. Kadri a fifty percent (50%) interest in an entity that would own and operate ProntoWash franchise units in Atlanta, Georgia.

117.    Upon information and belief, the security was not registered with the SEC or with the State of Georgia and is not exempt from registration.

118.    Defendants obtained the investment from Mr. and Mrs. Kadri by means of fraudulent misrepresentations as detailed above.

119.    Pursuant to the statute, Plaintiffs is entitled to rescission, damages in an amount to be proven at trial, attorneys' fees, and costs.

**WHEREFORE** Plaintiffs pray that this Court enter judgment in their favor and for an award of monetary damages in an amount to be determined at trial.  Plaintiffs also pray for their reasonable attorneys' fees and costs incurred herein, for statutory damages, and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT V – THE NORTH CAROLINA SECURITIES ACT, N.C. Gen. Stat. § 78A-1 et. seq.– All Defendants

120.    Plaintiffs hereby restate, re-allege and incorporate the above paragraphs 1-107 as if fully set forth herein.

121.    It is unlawful and a violation of The North Carolina Securities Act for any person to sell or offer to sell a security within North Carolina unless the security is exempt or registered and to sell a security via fraud or misrepresentation.

122.    As set forth in detail above, Defendants sold Mr. and Mrs. Kadri a fifty percent (50%) interest in an entity that would own and operate ProntoWash franchise units.

123.    Upon information and belief, the entity in which Mr. and Mrs. Kadri was acquiring an interest was a North Carolina entity.

124.    Upon information and belief, some or all of the representations were made from North Carolina.

125.    Upon information and belief, the security was not registered with the SEC or with the State of North Carolina and is not exempt from registration.

126.    Defendants obtained the investment from Mr. and Mrs. Kadri by means of fraudulent misrepresentations as detailed above.

127.    Pursuant to the statute, Plaintiffs are entitled to rescission, damages in an amount to be proven at trial, attorneys' fees, and costs.

**WHEREFORE** Plaintiffs pray that this Court enter judgment in their favor and for an award of monetary damages in an amount to be determined at trial.  Plaintiffs also pray for their reasonable attorneys' fees and costs incurred herein, for statutory damages, and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT VI – RICO – 18 U.S.C. § 1962(a) – All Defendants

128.    Plaintiffs hereby restate, re-allege, and incorporate paragraphs 1-107 above as if fully set forth herein.

129.    All of the defendants and each of them have violated the civil provisions of the RICO statute as described more fully below.

130.    Under 18 U.S.C. § 1964 (c), "Any person injured in his business or property by reason of a violation of Section 1962 of this chapter may sue therefor . . . and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."

131.    Under 18 U.S.C. § 1962(a), "It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

132.    The RICO statute defines a "person" as "any individual or entity capable of holding a legal or beneficial interest in a property."

133.    Each of the Defendants is a "person" as defined by the statute.

134.    The RICO statute defines the term "enterprise" to include "any individual, partnership, corporate, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).

135.    Each of the entity Defendants constitutes an "enterprise" as the term is defined in the RICO statute in that the Defendants used the entity Defendants to accomplish their conspiracy.

136.    Additionally, the association of Defendants constitutes an "enterprise" as the term is defined in the RICO statute.

137.    The Defendants are joined together in an association-in-fact to accomplish the goals of their conspiracy, and that group of all Defendants joined together constitutes an enterprise as that term is defined in the RICO statute.

138.    The goal of Defendants' enterprise is to convince unsuspecting foreign nationals looking to invest in a legitimate business to turnover the entirety of their proposed investment to Defendants, take all cash for personal gain and use, default on all obligations, and leave the foreign nationals with nothing.

139.    The Defendants are joined together as an association-in-fact for the purpose of furthering the goals of their enterprise.

140.    Defendants use a pattern of racketeering activity to accomplish the fraudulent goals of the enterprise.

141.    Section 1961(1) of RICO defines "racketeering activity" to include any of the enumerated predicate acts listed in § 1961(1).  Included in the list of predicate acts are wire fraud and securities fraud.

142.    Defendants have engaged in wire fraud.

143.    Under 18 U.S.C. § 1343, wire fraud is defined as follows:

144.    Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits, or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such a scheme or artifice . . .

145.    The Defendants used wires, as the term is defined above, to further their conspiracy, transferring funds via wire transfer, and communicating with Plaintiff, brokers, franchisees and others through wire.

146.    Defendants have engaged in securities fraud.

147.    Defendants sold Plaintiffs an interest in an unregistered security.

148.    Defendants formed an enterprise and engaged in activity to steal the money of foreign nationals and other potential franchisees in multiple states and locations by making misrepresentations and promises to the potential franchisees, taking the money for their own benefit, and then leaving the franchisees with nothing.

149.    Upon information and belief, each of the individual Defendants knowingly joined the conspiracy and engaged in activity to further the conspiracy.

150.    Defendants, jointly and severally, have colluded and engaged in fraudulent and illegal acts set forth above, which took place in interstate commerce and which constituted acts of wire fraud, mail fraud, bank fraud, and extortion.

151.    Defendants' fraudulent conduct and pattern and practice of fraud has been repeated with foreign nationals interested in investing in a franchise to obtain an E2 investor Visa.

152.    The activities of the enterprise of Defendants herein constitute a pattern of racketeering activity in that the activities were both continuous and related: the false acts were all intended to induce many foreign nationals to each turn over several hundred thousand dollars to Jonathan Munsell and his related entities with the promise of profitable, secure car wash franchises.

153.    Defendants and each of them have received income, assets, and benefits from the enterprise.

154.    Defendants used the income, assets, reputation and benefits of the companies acquired to further their scheme and spread the fraud to acquire other individuals in a similar manner.

155.    Each of the Defendants has derived income from their pattern of racketeering activity and has invested that income or the proceeds of the income in the entity defendants.

156.    Each of the Defendants has derived income from their pattern of racketeering activity and has invested that income or the proceeds of the income in the enterprise.

157.    Defendants' conduct has been ongoing for a substantial period of time.

158.    Defendants' conduct is systematic, ongoing and likely to be repeated.

159.    The victims of Defendants' conduct are similar victims, foreign nationals looking to invest in a franchise to obtain an E-2 Investor Visa.

160.    Under the statute, Plaintiffs is entitled to rescission, damages in an amount to be proven at trial, treble damages, attorneys' fees, and costs.

**WHEREFORE** Plaintiffs pray for an award of monetary damages in an amount to be determined at trial.  Plaintiffs also pray for their statutory reasonable attorneys' fees and costs incurred herein, for statutory treble damages, and for such other and further relief as this Court deems just and proper under the circumstances.

### COUNT VII – RICO – 18 U.S.C. § 1962(b) – All Defendants

161.    Plaintiffs hereby restates, re-alleges and incorporates paragraphs 1-107 and 128-160 above as if fully set forth herein.

162.    All of the defendants and each of them have violated the civil provisions of the RICO statute as described more fully below.

163.    Under 18 U.S.C. § 1962(b), "It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

164.   Upon information and belief, each of the individual, non-entity defendants has acquired an interest in some or all of the entity defendants.

165.   Upon information and belief, each of the individual, non-entity defendants has acquired an interest in the enterprise.

166.   Upon information and belief, the entity defendants have each acquired an interest in some of the other entities.

167.   Upon information and belief, each of the entity defendants has acquired an interest in the enterprise.

168.   Defendants and each of them have received income, assets, and benefits from the enterprise.

169.   Defendants used the income, assets, reputation, and benefits of the companies acquired to further their scheme and spread the fraud to acquire other companies in a similar manner.

170.   Under the statute, Plaintiffs is entitled to rescission, damages in an amount to be proven at trial, treble damages, attorneys' fees, and costs.

**WHEREFORE** Plaintiffs prays for an award of monetary damages in an amount to be determined at trial.  Plaintiffs also prays for his statutory reasonable attorneys' fees and costs incurred herein, for statutory treble damages, and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT VIII – RICO – 18 U.S.C. § 1962(c) – All Defendants

171.   Plaintiffs hereby restate, re-allege and incorporate paragraphs 1-107 and 128-160 above as if fully set forth herein.

172.   All of the defendants and each of them have violated the civil provisions of the RICO statute as described more fully below.

24

173.    Under 18 U.S.C. § 1962(c), "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

174.    Each of the Defendants conducts or participates directly or indirectly in the conduct of the enterprise's affairs.

175.    Upon information and belief, each of the individual Defendants knowingly joined the conspiracy and engaged in activity to further the conspiracy.

176.    Defendants, jointly and severally, have colluded and engaged in fraudulent and illegal acts set forth above, which took place in interstate commerce, and which constituted acts of wire fraud and securities fraud.

177.    Defendants and each of them have received income, assets, and benefits from the enterprise.

178.    Defendants used the income, assets, reputation, and benefits of the companies acquired to further their scheme and spread the fraud to acquire other companies in a similar manner.

179.    Under the statute, Plaintiffs are entitled to rescission, damages in an amount to be proven at trial, treble damages, attorneys' fees, and costs.

**WHEREFORE** Plaintiffs pray for an award of monetary damages in an amount to be determined at trial.  Plaintiffs also pray for their reasonable attorneys' fees and costs pursuant to the statute, for statutory treble damages, and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT IX – UNJUST ENRICHMENT – All Defendants

180.     Plaintiffs hereby restate, re-allege, and incorporate paragraphs 1-107 as if fully set forth herein.

181.     Defendants have received the $125,000 belonging to Plaintiffs without providing any compensation or thing of value to Plaintiff.

182.     Defendants have further used these funds to further their modus operandi and enter into similar transactions with other persons and companies.

183.     Plaintiffs has received no compensation or anything of value.

184.     Defendants, jointly and severally, have retained the benefits of Plaintiff's funds.

185.     Defendants' acceptance and retention of these benefits is unjust because Defendants have not compensated Plaintiffs for them.

186.     Allowing Defendants to retain the amount the benefits would inequitable.

**WHEREFORE** Plaintiffs pray that this Court enter judgment in their favor and against Defendants, jointly and severally, disgorge Defendants of their unjust enrichment, and award Plaintiffs damages in an amount to be proven at trial, for costs incurred herein and for such other and further relief this Court deems just and proper under the circumstances.

## COUNT X – VIOLATION OF THE FLORIDA FRANCHISE MISREPRESENTATION ACT, Fla. Stat. § 817.416 et. seq.– All Defendants

187.     Plaintiffs hereby restate, re-allege, and incorporate paragraphs 1-107 above as if fully set forth herein.

188.     It is a violation of the Florida Franchise Misrepresentation Act for any person to intentionally misrepresent the prospects for success or the total investment needed for a franchise.

189.     As detailed above, Defendants obtained Mr. and Mrs. Kadri's investment in a Pronto Wash franchise by misrepresenting the investment needed and the prospects for success.

190.    Under the statute, Plaintiffs is entitled to rescission, damages in an amount to be proven at trial, attorneys' fees, and costs.

**WHEREFORE** Plaintiffs pray that this Court enter judgment in their favor and against Defendants, jointly and severally, and award Plaintiffs damages in an amount to be proven at trial, attorneys' fees, for costs incurred herein and for such other and further relief this Court deems just and proper under the circumstances.

## COUNT XI – VIOLATION OF THE FLORIDA SALE OF BUSINESS OPPORTUNITIES ACT, Fla. Stat. § 559.80 et. seq.– All Defendants

191.    Plaintiffs hereby restate, re-allege, and incorporate paragraphs 1-107 above as if fully set forth herein.

192.    It is a violation of the Florida Sale of Business Opportunities Act for any person to misrepresent the known required total investment for such business opportunity, the amount of profits a franchisee can expect, or any material fact or create a false or misleading impression in the sale of a business opportunity.

193.    As detailed above, Defendants obtained Mr. and Mrs. Kadri's investment in a ProntoWash franchise by misrepresenting the investment needed and by making numerous material misrepresentations.

194.    Under the statute, Plaintiffs is entitled to rescission, damages in an amount to be proven at trial, attorneys' fees, and costs.

**WHEREFORE** Plaintiffs prays that this Court enter judgment in his favor and against Defendants, jointly and severally, and award Plaintiffs damages in an amount to be proven at trial, attorneys' fees, for costs incurred herein and for such other and further relief this Court deems just and proper under the circumstances.

## COUNT XII – VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA) – All Defendants

195.     Plaintiffs hereby restate, re-allege, and incorporate paragraphs 1-113 and 187-194 above as if fully set forth herein.

196.     Defendants' actions, as detailed above, are unfair and deceptive trade practices in violation of FDUTPA, Florida Statute § 501.201, et seq.

197.     Plaintiffs have been damaged by Defendants' violations, as detailed above.

198.     Accordingly, Plaintiffs are entitled to a declaratory judgment that Defendants' conduct violates the Florida Deceptive and Unfair Trade Practices Act.

199.     Pursuant to the statute, Plaintiffs are also entitled to rescind the agreement and recover damages, punitive damages, attorneys' fees, and court costs.

**WHEREFORE** Plaintiffs pray that this Court enter judgment in their favor and for an award of monetary damages in an amount to be determined at trial.  Plaintiffs also pray for their reasonable attorneys' fees and costs incurred herein, for punitive damages, and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT XIII – VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT of 1975, GA Code Ann., § 10-1-390 *et. seq.* (GFPA) – All Defendants

200.     Plaintiffs hereby restate, re-allege and incorporate paragraphs 1-107 above as if fully set forth herein.

201.     Defendants promised to provide the locations, to secure all equipment for the franchised business, including two mobile units, to provide a comprehensive sales and marketing plan, and to handle all aspects of the franchised business, including the training of all employees.

202.     Defendants failed and refused to provide any of the promised business services or equipment.

203.     Defendants promised to refund the purchase price in the event Plaintiffs were not able to obtain an E-2 Investor Visa, but Defendants failed and refused to do so. Defendants failed to escrow 85% of the purchase price as required by Georgia Code § 10-1-412.

204.     Defendants' actions, as detailed above, are unfair and deceptive trade practices in violation of the GFPA, GA Code Ann., § 10-1-390 *et. seq.*

205.     Defendants' violations were intentional; Defendants made the violations with full knowledge that their conduct was unlawful and that other victims of almost identical conduct had obtained judgments against them.

206.     Plaintiffs has been damaged by Defendants' violations, as detailed above.

207.     Accordingly, Plaintiffs are entitled to a declaratory judgment that Defendants' conduct violates the GFPA.

208.     Pursuant to the statute, Plaintiffs are also entitled to rescind the agreement and recover damages, treble damages, attorneys' fees, and court costs.

**WHEREFORE** Plaintiffs pray that this Court enter judgment in their favor and for an award of monetary damages in an amount to be determined at trial.  Plaintiffs also pray for their reasonable attorneys' fees and costs incurred herein, for statutory treble damages, and for such other and further relief as this Court deems just and proper under the circumstances.

### <u>COUNT XIV – VIOLATION OF THE NORTH CAROLINA SALE OF BUSINESS OPPORTUNITIES ACT, N.C. Gen. Stat. § 66-94 et. seq.et. – All Defendants</u>

209.     Plaintiffs hereby restates, re-alleges, and incorporates paragraphs 1-107 above as if fully set forth herein.

210.     It is a violation of the North Carolina Sale of Business Opportunities Act for any person to use any untrue or misleading statements in the sale of a business opportunity or to sell a business opportunity.

211.    As detailed above, Defendants obtained Mr. and Mrs. Kadri's investment in a ProntoWash franchise by making numerous material misrepresentations.

212.    Under the statute, Plaintiffs are entitled to rescission, damages in an amount to be proven at trial, attorneys' fees, and costs.

**WHEREFORE** Plaintiffs pray that this Court enter judgment in their favor and against Defendants, jointly and severally, and award Plaintiffs damages in an amount to be proven at trial, attorneys' fees, for costs incurred herein and for such other and further relief this Court deems just and proper under the circumstances.

## COUNT XV – VIOLATION OF THE NORTH CAROLINA CONSUMER PROTECTION ACT, N.C. Gen. Stat. § 75-1.1 - All Defendants

213.    Plaintiffs hereby restate, re-allege and incorporate paragraphs 1-107, 120-127 and 211-214 above as if fully set forth herein.

214.    Defendants' actions, as detailed above, are unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce.

215.    Plaintiffs has been damaged by Defendants' violations, as detailed above.

216.    Accordingly, Plaintiffs are entitled to a declaratory judgment that Defendants' conduct violates the North Carolina Consumer Protection Act.

217.    Pursuant to the statute, Plaintiffs are also entitled to rescind the agreement and recover damages, statutory treble damages, attorneys' fees, and court costs.

**WHEREFORE** Plaintiffs pray that this Court enter judgment in their favor and for an award of monetary damages in an amount to be determined at trial.  Plaintiffs also pray for their reasonable attorneys' fees and costs incurred herein, for punitive damages, and for such other and further relief as this Court deems just and proper under the circumstances.

(Verification to follow)

30

Executed this _11 September/2024_ (date) at _Toronto, ON, Canada_

_S.Kadri_

SAMAD KADRI

_____ )

_____ )

On _11 September, 2024_ before me, the undersigned, a Notary Public, in and for _the Province of Ontario_ personally appeared SAMAD KADRI, who produced identification sufficient to establish his identity or is known by me and who, after having been duly sworn, acknowledged to me that each and every statement set forth in the foregoing complaint is true and correct in all respects to his best knowledge and belief and that he executed the same as his free and voluntary act.

_____

Notary Public

My Commission number is _41658 J (Law Society Ontario)_

My Commission expires _permanent_

Executed this _11 September/ 2024_ (date) at _Toronto, ON, Canada_

_signature_

SANIA KADRI

_____ )

_____ )

On _11 September, 2024_ before me, the undersigned, a Notary Public, in and for _the Province of Ontario_ personally appeared SANIA KADRI, who produced identification sufficient to establish her identity or is known by me and who, after having been duly sworn, acknowledged to me that each and every statement set forth in the foregoing complaint is true and correct in all respects to her best knowledge and belief and that she executed the same as her free and voluntary act.

_signature_
Notary Public

My Commission number is _41658 J (Law Society Ontario)_

My Commission expires _permanent_



33

Respectfully submitted September 23, 2024.

/s/ Mary M. Clapp, Esq.
Mary M. Clapp, FBN #0962341
Delafran, LLC
mary@delafran.com
941-402-2240
8130 Lakewood Main St., Suite 130, #314
Lakewood Ranch, FL  34202
COUNSEL FOR PLAINTIFF